HARDY, Judge.
This is a compensation suit in which plaintiff claims total and permanent disability. After trial there was judgment in favor of plaintiff awarding compensation in the amount of $17.86 per week, not exceeding 400 weeks, less amounts already paid, from which judgment defendant has appealed.
Plaintiff alleged that while acting in the ■course and scope of his employment on or about the 20th day of October, 1947, he was struck in the right groin or lower right abdomen by a slab of cut wood from a log while he was engaged in “tailing” a circular saw at his employer’s sawmill; that he received medical treatment, all of which was to no avail; that he continues to suffer from the effects of the accident; that he was not advised by defendant’s doctors of the diagnosis of his injury but “believes that he suffered a hernia in said accident and that he continues to suffer from this hernia.”
The above are the only allegations of plaintiff’s original petition bearing upon the nature, extent and degree of his injury.
In answer to plaintiff’s demands defendant admitted the occurrence of the accident and averred that plaintiff was referred to certain named doctors in Alexandria who confirmed a diagnosis of hernia which was repaired by an operation performed at the Baptist Hospital in Alexandria on November 4, 1947, which operation was a complete success. Defendant further asserted that compensation at the rate of $17.86 per week had been paid plaintiff from the date of accident up to and including January 31, 1952, at which time payments were discontinued for the reason that plaintiff was not then and had not for a long time been disabled in any respect as a result of the injuries sustained in the described accident. Defendant further averred that any disability or incapacity of plaintiff, if same existed, was due entirely to other causes.
Plaintiff’s original petition was filed March 19, 1952, and a supplemental and amended petition was. filed May 13, 1952. Trial was had on September 26, 1952, at which time defendant was permitted to orally tender a general denial of the allegations of plaintiff’s supplemental pleading, which was later confirmed by written answer filed October 6, 1952.
In his supplemental petition plaintiff elaborates in some detail upon his alleged injuries, specifically making the following allegations :
“2.
“That as a result of the accident suffered by petitioner and set out in Article 3 of the original petition, your petitioner suffered a femoral hernia of *398 the right side and further, as the result of the said accident and injury the muscles, tendons, bones, ligaments, blood vessels and nerves in his back and right side were torn, bruised, lacerated and broken; that continuously since the date of the accident and injury he has suffered unremitting pain in his lower lumbar region of his back.
“3.
“That your petitioner sustained injuries to the muscles, tissues, bones, ligaments, cartilages and nerves of his back, and that he sustained injuries and shocks to his general nervous system, all to such severity and extent as to render him permanently and totally disabled to perform any work of any reasonable character.
“4.
“That, in addition thereto, the said accident and injury produced or caused a traumatic neurosis to such extent that the plaintiff is unable to do any work of any reasonable character.
“5.
“That the region of his low back and lower abdomen has caused your petitioner continuous pain from the date of accident and injury and has rendered him unable to do any work of any reasonable character.
“6.
“That prior to the accident and injury, your petitioner was able to do and did do a full eight-hour day of work six days per week, and did so perform for this defendant for a period of some five years or more prior to the said accident and injury, but continuously since the said accident your petitioner has been unable to perform any labor whatever, and is now totally and permanent disabled to perform work of any reasonable character.
“7.
“In the alternative, but in the alternative only and in the event the Court should find that petitioner is not now suffering from any direct disability as a result of the said accident, then your petitioner shows that the said accident aggravated an existing condition at that time and set in motion and operation a condition, a diagnosis of which is unknown to your petitioner, which is at this time rendering your petitioner in a state of total and permanent disability.”
At the time of the accident plaintiff was 59 years of age and was 64 years old at the time of trial. Plaintiff’s testimony as to the nature of his alleged injuries and his symptoms were vague, uncertain and thoroughly unsatisfactory. In response to his counsel’s request to go into detail as to his pain and disability, plaintiff was only able to answer:
“It is my back and side and a knot in my stomach which gives me the trouble.”
It is true that plaintiff testified that he had suffered from the same complaint's continuously since the time of his injury and had been entirely disabled by reason thereof. The extent of the testimony of three lay witnesses offered on behalf of plaintiff may be comprehended in the observation that plaintiff had not engaged in any manual labor since the accident. The only medical witness tendered in the case was Dr. R. E. Corkern, who appeared as a witness for plaintiff and who testified that in view of his examination of plaintiff, made some 4½ years after the accident which is the basis of the suit, it was his opinion that plaintiff was totally and permanently disabled. However, Dr. Corkern could not and did not relate the disability to the accident and, on the contrary, he testified positively that in his opinion plaintiff had fully recovered from the hernia which was sustained as the result of the accident.
Filed in the suit in response to a rule issued by plaintiff are reports of Dr. H. H. Hardy, Dr. A. Scott Hamilton and copies of hospital records of the Shreveport Charity Hospital referring to treatment of plaintiff.
The report of Dr. Hardy was made some four days after the operation for the repair *399 of a femoral hernia and the doctor expressed the opinion that plaintiff would 'be discharged from the hospital approximately a week after the operation, should make an uneventful recovery and should be able to return to work in approximately three months. The report of the thorough examination of Dr. Hamilton was made under date of May 28, 1948. This doctor observed that there was a “paucity of objective findings”; that he could make no orthopedic diagnosis which would satisfactorily explain plaintiff’s complaints and that he felt that plaintiff was exaggerating his symptoms, either consciously or unconsciously. The doctor recommended that an attempt be made to settle the claim on an “equitable basis”, expressing the opinion that this would have the effect of completely relieving plaintiff’s symptoms and bring about the return of his ability to work.
Obviously one of the unusual circumstances in connection with this case is the fact that defendant continued compensation payments for a period of well more than four years following the accident. This circumstance is explained in brief of counsel for defendant on the ground that the long continuance of payments was only discovered at the time a change in management was effected. Cottnsel further stated that upon discovery of this fact, as the result of an audit, plaintiff was requested to present himself for physical examination and upon his failure so to do the payments were discontinued. This latter statement appears to be substantially 'borne out by plaintiff’s testimony.
The Charity Hospital records show that on August 6, 1948, plaintiff was admitted on the basis of his complaints of a progressive growth on his right temple. Additionally it was noted that plaintiff complained of aching in the chest for a period of years, accompanied by dyspnea. The growth on plaintiff’s face upon examination was diagnosed as a squamous cell carcinoma and he was given a full course of X-ray treatment and discharged in good condition with instructions to return to the tumor clinic in two weeks on August 19, 1948. Thereafter plaintiff returned for examination as directed over the period of the. succeeding four years. The face cancer appears to have been the only objective finding, with the exception of the fact that the hospital examiner noted that plaintiff suffered from an asthenic chest, which appears, by definition of Maloy’s Simplified Medical Dictionary for Lawyers, to be a condition characterized by weakness, loss of strength and debility, of which one of the symptoms is pain in the chest.
Counsel for plaintiff claims that defendant failed to offer any evidence, and particularly he urges that defendant’s failure to tender the medical experts who had examined plaintiff should be construed against its contentions. We cannot so hold in view of our findings of fact which are hereinafter detailed.
Careful examination of the record has completely failed to convince us of any causal connection or relationship between plaintiff’s alleged symptoms, complaints and disability at time of trial and the accident and injury which he suffered while in defendant’s employ. This case concerns purely and simply a question of fact and we have attempted to set forth the pertinent and material elements of fact in considerable and perhaps unnecessary detail only 'because our conclusion does not accord with that of our learned brother of the court below.
We have been unable to find a single persuasive, much less conclusive, factual circumstance which would justify :a finding that plaintiff has established his claims of disability as a result of the accident of October, 1947.
Under these circumstances we are not cognizant of any requirement which obligated defendant to tender any evidence. It follows that failure to proffer witnesses in such case cannot justify the application of the presumption that their testimony would be unfavorable.
It is true that plaintiff has alleged, as above noted, a “traumatic neurosis”, but this allegation of pleading has not been sustained by plaintiff. Any conclusion to this end would be predicated upon the rankest sort of speculation and conjecture.
*400 For the reasons assigned the judgment from which appealed is reversed and set aside and there is now judgment in favor of defendant rejecting plaintiff’s demands at his cost.